# COOS,

## KENT v. TYSON.

The order in which facts may be proved on trial is directed by the judge who tries the cause, and no exception can generally be taken to his proceedings in that particular.

Evidence that one, claiming to be the agent of the defendant, habitually took care of the defendant's warehouse, and sold and delivered to customers the goods therein, is competent evidence of the agency.

If one, employed in the service of a party, testify that a certain individual is the general agent of such party, no objection lies to the testimony; the proper construction of it being simply that the individual acted as such, and not that the relation of principal and agent had been legally and formally established between the parties.

An agent is in general a competent witness to prove his own authority, unless it appear to have been created by writing.

If a question of the sufficiency of notice required by the rules of court, depend upon distance, and if it be settled by the court upon affidavits exhibited at the trial, the Superior Court will not revise the decision upon exceptions.

Depositions, of which parts have been excluded by the court, should not ordinarily be sent with the papers to the jury. But if counsel have special notice that they are about to be so sent, and do not promptly and intelligibly object, he will be concluded as acquiescing in the irregularity.

Mixed questions of law and fact necessarily go to the jury under the instructions of the court. If these be deemed by the party insufficient, he should move at the time for specific instructions, in order to lay the foundation for a just exception.

ASSUMPSIT. The contract, signed "A. Haven, agent, Tyson Furnace, by E. K. West," was dated December 17, 1840. It recited, that a note had been given by Kent to the defendant for $318,00, payable in one year, in part payment for a lot of stoves bought by Kent of the defendant, to sell out at Lancaster, and provided that the defendant should not exact payment of the note at its maturity,

VOL. XX.        9

---

Kent *v.* Tyson.

---

but should wait long enough to enable the plaintiff to make collections from the sales, without resorting to rigorous measures to enforce them. Bad debts to be excepted from the contract.

At the trial it appeared that the defendant, residing in Baltimore, Maryland, did business in Vermont, under the name of " The Tyson Furnace."

The plaintiff was permitted by the court to prove the signature of E. K. West to the contract, the defendant objecting, without first proving his authority.

The deposition of Hiram C. H. Bliss was excepted to as incompetent. As much of it as showed that the deponent worked under the directions of West in selling the castings of the defendant, and in removing them from his depot in Newbury, and delivering them to the various purchasers, and that he made the contract in suit with the plaintiff, under the authority of West, and with his approbation; also that part of the deposition in which the deponent states that West acted as the agent of the Tyson Furnace, at Newbury, and had the charge of its depot or warehouse at Newbury, and of selling and sending out the stoves, and employed all the hands to carry out the stoves, and that Augustus Haven was the general agent of the Furnace in Plymouth, Vermont, were admitted by the court, and other parts excluded.

An objection was taken to the notice, which was stated to have been too short; but upon evidence taken by the court, it appeared to have been sufficient for the distance at which the party resided from the place of taking.

Nelson Kent was admitted, to prove that a bill of stoves for which the note was given, was signed by West, to which the defendant objected.

The plaintiff then offered the deposition of Augustus Haven, to the whole of which the defendant objected as incompetent; but parts of it were admitted, in which the deponent testified that in 1839 or in 1840, Ephraim K.

Kent v. Tyson.

West, then of Newbury, was appointed agent for the sale of the defendant's wares, in the northern part of Vermont and New-Hampshire; that he was instructed to sell on a year's credit; but on making known to the deponent the contract with the plaintiff, no objection was taken; that in September, 1842, he sent by mail to the plaintiff and to others a circular, informing them that West was succeeded in the agency by another person; that West during his agency was accustomed to exchange the wares of the defendant for horses and other barter.

The note of $318,00 had been indorsed by the defendant to the bank of Woodstock, and by them sent to the Lancaster bank for collection. John Wilson, the cashier of this bank, testified that Kent, after having been called upon, came and paid $75,00, which he stated was all that was due, and all that he should pay, and detailed the substance of the contract. To this evidence the defendant objected, but it was admitted by the court.

There was evidence in the case tending to show that the contract made by West was known to Haven, and approved by him, and that he transacted the business of the Tyson Furnace during the year 1840.

On the 28th of April, 1843, a suit was brought upon the note by the bank of Woodstock, against Kent, in which judgment was rendered for the bank, which was paid by Kent; and the present action is brought by him to recover damages sustained through the breach of the contract with the defendant. The jury were instructed to inquire whether, under the circumstances, as they appeared in evidence, the suit upon the note was delayed long enough to enable Kent, as a prudent man of business, and exercising a reasonable diligence in the matter, to have realized enough from the sales of the stoves to pay the notes, without using too rigorous measures. Also, whether the demands uncollected at that time were good, and whether he had exercised reasonable diligence in endeavoring to sell the

stoves then on hand. If they should find that the suit was brought too soon, that the demands were good, and that Kent had been diligent, they were to ascertain what damages he had sustained by being compelled to pay the note at that time.

The defendant excepted that all these inquiries but that relating to the damages were questions of law.

Some of the depositions which were sent with the other papers to the jury had been submitted to the court, and portions of them adjudged improper to be read to the jury. It however appeared that the counsel for the plaintiff had submitted all the papers in the case, including the writ, contract, depositions and other papers, to the defendant's counsel, calling his attention to each severally, and asked him if he had any objections to their going to the jury ; and the defendant's counsel made no other reply than that he objected to all of them.

A verdict was found for the plaintiff for $78,99, which, for the foregoing rulings and instructions of the court, and for the alleged irregularity in respect to the depositions which went to the jury, the defendant moved to set aside.

Whereupon the questions arising were transferred to the Superior Court for determination.

*Cooper*, for the defendant.

*Bellows*, for the plaintiff.

GILCHRIST, C. J. Several exceptions to the verdict appear in this case, and will be considered in the order in which they have been reported.

1. The plaintiff was permitted to prove the supposed agent's signature to the contract, before establishing in proof the agency itself. There is no objection to this course beyond that of a possible inconvenience in proving a fact which does not support the party's cause without the aid of another fact. This is incident to all trials. It

Kent *v.* Tyson.

seldom happens that all the facts can be simultaneously proved, and there is no rule but that of sound expediency arising upon the view of each case, that establishes priority in favor of one or another of a chain of facts, deriving each its force and relevancy from the complete proof of all the others. If the proof of the agent's acts was irrelevant, without showing also his authority, proof of his authority would also have been equally unavailing without his acts. Which should be first proved, is and ought to be entrusted to the discretion of the judge who tries the cause.

2. The deposition of Hiram C. H. Bliss goes directly to establish the fact that West habitually controlled the goods of the defendant, in his ware-house at Newbury, sold them and delivered them to purchasers throughout a large district, in so public a manner that the claim of agency and authority which he made, might not unfairly have been presumed to be known and admitted by his constituent, residing at Plymouth. The open and public acts of a party claiming to be an agent are legal evidence of the relation. The witness was the servant of West, employed in the business of the alleged agency, and was fully informed and had the best means of being informed of the claim and capacity under which his employer assumed to sell the wares of the defendant. Stark. Ev., part 4, 56.

In stating, moreover, that Haven was the general agent, he could not have been understood to testify to anything beyond the open and visible acts of that party. Such is the obvious meaning of the testimony, and it cannot reasonably be construed as intended to establish any authority, as between Haven and the defendant, for the acts and assumptions of the former ; and the testimony is competent.

The objection to the notice was settled in the court below, upon evidence that the distance of the party on whom it was served was not so great as to render a longer notice necessary, by the rules applicable to the case. This question of distance was one which we cannot reconsider.

The testimony of Nelson Kent, which proved the signature of West to the bill of stoves for which the note was given, might have been necessary to complete the chain of evidence by which the contract was sought to be brought within the scope of his authority. The precise nature of the objection is not pointed out, and none appears.

The deposition of Haven proves his general agency, and his appointment of West as a subordinate agent for conducting the business with which the witness was charged. The deposition does not show by what means—whether by writing or otherwise—either the witnesses or West's authority was constituted, or what was the limit of either. But in the absence of evidence that there was a writing in either case, the deposition is clearly competent to establish the facts it contains. The general agency of the deponent, the appointment and dismissal of West, the approbation, or at least the acquiescence of the deponent in the act of West in making the contract in dispute, and the liberal scope which the last named party was accustomed to assume in general, in the discharge of his office, with the knowledge and acquiescence of the deponent—these facts all appear to be pertinent to the issue, and the deposition seems competent to prove them.

When the plaintiff was called on by the bank of Woodstock, through their correspondent at Lancaster, to pay the note to which the contract related, it was proper that he should give notice of his claim under the contract, and this is all the conversation which the testimony of Wilson relates, amounted to.

An objection was taken that certain questions which the jury were instructed to consider were improperly referred to them. If it were to be conceded that these questions were of a mixed nature, which is all we must presume, that was intended by the exception, they were necessarily left to the jury; and if the instructions of the court on the matters of law involved, were less specific or full than

the defendant conceived to be due to the justice of his cause, the desired instructions should have been moved for, in order to have laid the ground for a just exception to the verdict.

The only remaining exception is founded on the alleged irregularity of permitting depositions to go to the jury when they retired, of which some parts were not permitted to be read to them. On the law relating to this subject several propositions are laid down in *Page* v. *Wheeler*, 5 N. H. 91. One of these is, that if the paper which goes to the jury by mistake be immaterial, the verdict ought not for such an irregularity to be disturbed. The case does not show anything as to the materiality of these depositions, except that it was denied by the plaintiff himself. But the circumstances under which they were delivered to the jury are such, that the irregularity may justly be imputed to the defendant himself. His attention was called to each paper severally, and no objection was made, but one which, from its comprehensive scope, the objector himself may be presumed to have considered frivolous. If his conduct did not necessarily wear that aspect, it certainly tended to allay the vigilance of the plaintiff's counsel, and to divert his attention rather than to awaken it. When the defendant's counsel, on being asked if he objected to any of the papers going to the jury, did not distinguish those now in question from the writ and other necessary papers, if he may not justly be charged with an intention to mislead, he ought, we think, to submit to the consequences of having made his objections in a manner so little likely to be understood. His objection on notice should have been prompt and intelligible; indicating at once actual opposition in his own mind, and an undoubted purpose of making it known at the moment.

These exceptions must all be overruled, therefore, and there must be

*Judgment on the verdict.*